IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KYLE KINZY and JACKI KINZY, | ) |
| Plaintiffs, | ) |
| v. | ) No. 16 C 8230 |
| HOWARD AND HOWARD, PLLC, an Illinois professional limited liability company, HOWARD AND HOWARD ATTORNEYS, an Illinois limited liability company, HOWARD AND HOWARD, LLC, an Illinois limited liability company, HOWARD AND HOWARD, LTD., an Illinois corporation, FIDELITY NATIONAL LAW GROUP, a business entity, PIERCE AND ASSOCIATES, an Illinois corporation, PIERCE AND ASSOCIATES, PC, an Illinois corporation, PIERCE & ASSOCIATES, LTD., an Illinois corporation, and FIRST TENNESSEE BANK, NATIONAL ASSOCATION, a national bank, | ) Judge Virginia M. Kendall |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Kyle and Jacki Kinzy filed an eight count complaint against Defendants Howard & Howard PLLC, Fidelity National Law Group, Pierce and Associates, P.C., and First Tennessee Bank, National Association, related to First Tennessee's alleged improper foreclosure of the Kinzys' home, which was effectuated by the rest of the Defendants, law firms that represented First Tennessee in the foreclosure action.[1]

---

[1] The complaint alleges (1) violations of the Fair Debt Collections Practices Act (the "FDCPA"); (2) false or misleading representations; (3) violations of the Illinois Consumer Fraud and Deceptive Practices Act (the "ICFDPA"); (4) identity theft; (5) fraud, forgery, counterfeiting and violations of the RICO Statute; (6) intentional infliction of emotional distress; (7) quiet title; and (8) slander of title.

1

Two motions are currently pending before the Court: (1) Fidelity and Pierce's[2] Motion to Dismiss or Transfer Case (Dkt. 17); and Howard & Howard, First Tennessee, and Pierce's (the "Stay Defendants") Motion to Stay Proceedings Pending Resolution of Plaintiffs' Appeal (Dkt. 14). For the reasons stated below, the Motion to Dismiss or Transfer is denied and the Motion to Stay is granted.

## BACKGROUND

In January 2006, the Kinzys purchased a property in Long Grove, Illinois by obtaining a $1,060,000 mortgage loan from First Horizon Home Loan Corporation. (Dkt. 1 ¶¶ 13, 4; Dkt. 1-2 at 4-37; Dkt. 34 ¶ 17.) In the first half of 2007, First Tennessee acquired First Horizon's assets as part of a merger. (Dkt. 1-2 at 1; Dkt. 34 ¶¶ 18-20.) In September 2007, First Horizon recorded a mortgage on the Property, which was recorded to "add the husband's name" (the "2007 Mortgage"). (*Id.* ¶¶ 23-26.) The Kinzys allege that the 2007 Mortgage was created without their knowledge, included forgeries of Mr. Kinzy's initials, had a forged notary certification, and included other material alterations. (*Id.* ¶ 24.) On July 14 2009, First Horizon, then a division of First Tennessee and represented by Pierce, filed a foreclosure action in Lake County, Illinois Circuit Court against the Plaintiffs regarding the Property (the Foreclosure Action), alleging that the Kinzys had failed to pay their mortgage since August 2008 and attached the 2007 Mortgage. (*Id.* ¶ 28; Dkt. 14-6.) On April 9, 2010, First Horizon, again through Pierce, filed an amended complaint in the Foreclosure Action, also attaching the 2007 Mortgage. (Dkt. 14-7.) In response, the Kinzys filed various affirmative defenses and counterclaims against First Horizon and First Tennessee in the Foreclosure Action, including allegations that the 2007 Mortgage was invalid because it included forgeries. (Dkt. 14 ¶ 8-9.) The Kinzys' counterclaims were dismissed by the Circuit Court on October 24, 2013. (Dkt. 14-

---

[2] On November 2, 2016, the Court granted Pierce's motion to join both motions. (*See* Dkt. 35.)

9.) Following the dismissal of their counterclaims, the Kinzys filed First Amended Verified Counterclaims, again alleging the 2007 Mortgage included forged initials and First Tennessee was not the holder of the note due to alleged improprieties in its merger with First Horizon. (Dkt. 14-10.) The Amended Counterclaims included claims for breach of contract, breach of fiduciary duty, slander of title, false and misleading representations, various statutory violations, including violations of the Illinois Consumer Fraud and Deceptive Practices Act, and allegations that First Tennessee participated in a conspiracy to commit fraud, in addition to a claim to quiet title. (Dkt. 14-10, 14-11.) The amended counterclaims were stricken by the Circuit Court in the Foreclosure Action on January 8, 2015. (Dkt. 14-15.) A week later, First Tennesee filed its Third Amended Complaint in the Foreclosure Action, the Kinzys failed to respond, and a default judgment was entered against them on May 6, 2015. (Dkt. 14-16, 14-19.) On July 29, 2015, a Judgment of Foreclosure was entered against the Kinzys. (Dkt. 14-20.) Approximately one year later, the judicial sale of the Property was confirmed, and the court in the Foreclosure Action noted that both the 2006 and 2007 Mortgages "were properly executed and recorded with the Lake County Record of Deeds." (Dkt. 14-21.) Plaintiffs filed their notice of appeal in the Foreclosure Action on August 26, 2016, and filed their opening brief on December 23, 2016. (Dkt. 14-22.) A review of their appeal brief reveals that the Kinzys' appeal primarily focuses on alleged failures by the trial court in the Foreclosure Action to properly consider their argument that the 2007 Mortgage is unenforceable because it includes forgeries and other defects.

On April 14, 2016, before the judicial sale was confirmed, the Kinzys filed suit against the Defendants in federal court, primarily alleging that the Defendants violated various state and federal laws for prosecuting the Foreclosure Action based on the 2007 Mortgage, which according to them, was a fraud and unenforceable. *Kinzy v. Howard & Howard*, No. 16 C 4375

(N.D. Ill. 2016).  In that action, which was assigned to this Court, Plaintiffs failed to timely serve the Defendants and then moved to voluntarily dismiss the suit pursuant to Federal Rule of Civil Procedure 41(a)(1) before responding to the Defendants' 12(b)(5) motion to dismiss.  Three days after voluntarily dismissing the action, Plaintiffs filed the instant action, which was initially assigned to Judge Durkin and is substantively the same as the original federal action.  (*See* Dkt. 1.)  Upon the Defendants' request this action was transferred to this Court on October 4, 2016.  (*See* Dkt. 21.)

## **MOTION TO DISMISS OR TRANSFER**

Fidelity and Pierce have moved for sanctions to be assessed against the Kinzys, arguing that the Kinzys' voluntary dismissal of the original federal action and then the refiling of a substantively similar complaint was an improper attempt to "judge-shop" and avoid this Court's review.  As a sanction for this alleged impropriety, Fidelity and Pierce urge the Court to either dismiss the suit with prejudice or, pursuant to Rule 41(d), order Plaintiffs to pay for Defendants' costs in defending the original federal action and stay this matter until they have complied with such an order.[3]  (Dkt. 17 at 5-9.)

As Fidelity and Pierce point out, this Court "possesses inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) (quotation omitted).  This inherent power includes the ability to sanction parties through dismissal, a sanction only reserved for the most egregious abuses of the judicial process, like fraud on the court, perjury, submission of falsified evidence, and destruction of evidence.  *Jackson v. Murphy*, 468 F. App'x 616, 619-20 (7th Cir. 2012); *see also Kovilic*

---

[3] Fidelity's Motion to Dismiss or Transfer was filed when Judge Durkin was presiding over this matter.  In their Motion, Fidelity and Pierce also asked that the case be transferred back to this Court, which has already been done.

4

*Constr. Co., Inc. v. Missbrenner*, 106 F.3d 768, 773 (7th Cir.1997) (noting that cases that have upheld sanction of dismissal typically involve "bad faith, fraud, or undue delay by one of the parties"). Although judge-shopping could be considered to be conduct that abuses the judicial process, this Court is not convinced that by voluntarily dismissing the original federal action and then refiling a substantively similar suit, the Kinzys engaged in judge-shopping. Rather, it is possible that the Kinzys voluntarily dismissed the original federal action because the suit was potentially going to be dismissed due to their failure to timely serve the Defendants. That dismissal, as the Kinzys point out, would have been without prejudice, allowing them to refile their action. *See* Fed. R. Civ. P. 4(m). Although the Kinzys' prosecution of the original action may have been dilatory, their conduct does not rise to the level warranting dismissal of the instant action with prejudice, nor does it involve perjury, the submission of falsified evidence, or other actions warranting dismissal. Furthermore, the primary case cited by Fidelity in support of their argument for dismissal undercuts their position. *See Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) (finding that the district court abused its discretion when it dismissed actions with prejudice for judge-shopping because it failed "to consider less drastic sanctions for judge-shopping than dismissal of both actions"). Furthermore, Fidelity failed to cite to any authority from the Seventh Circuit where a court has dismissed an action under analogous circumstances.

The Court also declines to impose monetary sanctions on the Kinzys pursuant to Federal Rule of Civil Procedure 41(d). In situations where, as here, plaintiffs filed an action based on or including the same claims against the same defendant after previously dismissing an action, Rule 41(d) permits the court to order plaintiffs to pay all or part of the costs of defending the previous action and may stay the proceedings until the sanctioned party has complied. Fed. R. Civ. P.

41(d). The decision to award such a sanction, however, is entirely within the court's discretion. *Id.* The Court declines to impose such sanctions under these circumstances. First, the voluntary dismissal occurred prior to any of the Defendants entering an appearance in the original suit. Furthermore, the Kinzys did not receive any adverse rulings from this Court in the original federal suit prior to their dismissal, a fact that makes it unlikely that they engaged in judge-shopping and that distinguishes it from *Vaqueria Tres Monjitas, Inc. v. Cubano*, 341 F.Supp.2d 69 (D.P.R. 2004), a case Fidelity and Pierce point to in support of their plea for sanctions.

**MOTION TO STAY PROCEEDING PENDING RESOLUTION OF PLAINTIFFS' APPEAL**

The Stay Defendants have moved to dismiss or stay the action pursuant to the *Colorado River* abstention doctrine because they argue that resolution of the Foreclosure Action, which is now on appeal, will resolve many, if not all of the Kinzys' claims in the instant action. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Instead of addressing the threshold questions regarding the applicability of the doctrine, however, the Stay Defendants spend most of their motion arguing that various preclusive doctrines would eliminate the Plaintiffs' claims if the Illinois Court of Appeals affirms the judgment of the trial court in the Foreclosure Action. Similarly, in their response, the Kinzys focus on the substantive legal issues that would arise if the state court's decision in the Foreclosure Action were to be affirmed. Because none of the parties have examined whether the doctrine applies, the Court will perform that analysis.

I.  **LEGAL STANDARD**

Motions seeking abstention due to the *Colorado River* doctrine are typically filed pursuant to Rule 12(b)(1), and the Court will construe the Defendants' motion to stay or dismiss as one filed pursuant to that rule. When evaluating such a motion, the Court must accept all

well-pleaded facts as true and draw reasonable inferences in favor of the plaintiff when determining whether it should decline to exercise jurisdiction and stay the proceeding. *See Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993). In its consideration, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)). The party seeking jurisdiction bears the burden of proving that jurisdiction is satisfied. *See Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009).

## II. DISCUSSION

In general, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court." *Huon v. Johnson & Bell, Ltd.*, 657 F3d 641, 645 (7th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 817)). The *Colorado River* doctrine nonetheless creates a narrow exception to this rule, allowing federal courts in exceptional cases to defer to a concurrent state court case because of the need to give "regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* The Court's duty is "not to find some substantial reason for the *exercise* of federal jurisdiction but instead to ascertain whether there exist exceptional circumstances, the clearest of justifications…to justify the *surrender* of that jurisdiction." *Id.* at 645-46 (citation and quotation omitted).

In determining whether to abstain under the *Colorado River* doctrine, the Court conducts a two-part inquiry. *See Tyrer v. City of South Beloit, Ill.*, 456 F.3d 744, 751 (7th Cir. 2006). First, it must decide whether the concurrent state and federal actions are parallel. *Id.* The two suits are parallel when "substantially the same parties are contemporaneously litigating

7

substantially the same issues." *Id.* at 752. "Precisely formal symmetry is unnecessary. A court should examine whether the suits involve the same parties, arise out of the same facts, and raise similar factual and legal issues." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 814–15 (7th Cir. 2016) (quoting *Adkins v. VIM Recycling*, Inc., 644 F.3d 483, 498–99 (7th Cir. 2011)). This analysis helps determine "whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Adkins*, 644 F.3d at 499 (quoting *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004)). Second, only if the Court finds that the suits are parallel, it must then weigh a number of non-exclusive factors that can demonstrate the existence of exceptional circumstances. *Tyrer*, 456 F.3d at 751. There are ten such factors:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Adkins*, 644 F.3d at 500-01. Assessing these factors does not involve application of a "mechanical checklist" but instead requires a "careful balancing" by the Court in light of the specific facts of the case. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983).

### A. The State and Federal Actions Are Parallel

Both the Foreclosure Action and the instant suit involve substantially the same parties contemporaneously litigating similar factual and legal issues. First Tennessee and the Kinzys are parties to both actions. Although the rest of the Stay Defendants are not parties to the Foreclosure Action, as noted above, formal symmetry is not required. Furthermore, a finding of

parallel parties is justified because Howard & Howard, Pierce and Fidelity are only defendants in the federal action "because of acts in furtherance of [their] representation of First Tennessee in the Foreclosure Action. *See, e.g.*, *Nieves v. Bank of America, N.A.*, No. 14-CV-2300, 2015 WL 753977 at *4 (N.D. Ill. Feb. 20, 2015) (finding state foreclosure action and federal case regarding breach of contract, FDCPA, ICFA, RESPA, and TILA were parallel where three parties were involved in both actions but one party in federal action was not in state action); *Smith v. Bank of Am., N.A.*, No. 14 C 1041, 2014 WL 3938547, at *3 (N.D. Ill. Aug. 12, 2014) (finding that foreclosure action and subsequent action filed in federal court were parallel even though law firm that represented lender was party in federal suit but not in underlying foreclosure action); *Pirard v. Bank of America*, No. 12 C 2901, 2013 WL 1154294 at *4 (N.D. Ill. Mar. 19, 2013) (concluding state foreclosure action and federal case were parallel even though some defendant lenders were not parties in state foreclosure action); *Charles v. Bank of America, N.A.*, No. 11 CV 8217, 2012 WL 6093903 at *4 (N.D. Ill. Dec. 5, 2012) (same).

The Foreclosure Action and this action also involve substantially the same factual and legal issues. In the instant action, all of the Kinzys claims primarily relate to the authenticity of the 2007 Mortgage, its enforceability, and the actions that the Defendants took to foreclose on the mortgage. (*See* Dkt. 1 ¶¶ 17-25.) The Foreclosure Action by its very nature involves assessing whether the 2007 Mortgage is valid and enforceable and the Appellate Court is now assessing the propriety of the foreclosure action. Second, as either counterclaims and defenses in the Foreclosure Action, the Kinzys have repeatedly asserted and litigated that the 2007 Mortgage was unenforceable because it included forgeries and other defects and that First Tennessee had no legal right to foreclose on the note. Those same claims are at the heart of their complaint before this Court.

9

Furthermore, there is a substantial likelihood that a final judgment in the Foreclosure Action will dispose of all claims presented in the Kinzys' federal complaint, which is the critical question in considering whether a state and federal case are parallel. *See Huon*, 657 F.3d at 646. If the Illinois Appellate Court affirms the determination that the 2007 Mortgage was valid and enforceable, the Kinzys' central claims – that the 2007 Mortgage was fraudulent and that First Tennessee does not have a valid claim to the note – would be precluded. While the Foreclosure Action may not dispose of every component of the Kinzys' complaint, it will certainly resolve the bulk of the factual and legal questions "by examining largely the same evidence" as this case. *Id.* at 647. The fact that the Foreclosure Action is not guaranteed to resolve every issue is not fatal to finding the cases parallel. *See Freed v. J.P. Morgan Chase Bank, N.A.,* 756 F.3d 1013, 1020 (7th Cir. 2014) ("[T]he parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants, neither can it be dispelled by repackaging the same issue under different causes of action.") (quoting *Clark v. Lacy*, 376 F.3d 682, 686-87 (7th Cir. 2004); *AAR Intern., Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) ("Suits need not be identical to be parallel and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel.") (citation omitted). Moreover, any minor differences between the Foreclosure Action and this case does not raise a substantial doubt that the Foreclosure Action will be an "adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28. The Foreclosure Action and this case are parallel because they involve substantially the same parties, arise from a substantively similar set of facts, and present analogous legal issues that the Illinois Appellate Court has a substantial likelihood of resolving.

### B. Factors Weigh in Favor of Abstention

Because the Foreclosure Action and the instant action are parallel, the Court must next determine whether extraordinary circumstances militate in favor of abstention by considering the ten nonexclusive factors described above. *See Adkins*, 644 F.3d at 500-01. The Seventh Circuit has noted that this Court "is given the discretion to apply more significant weight and analysis to those factors that are most relevant to the case at hand." *Freed*, 756 F.3d at 1021.

The majority of the *Colorado River* factors weigh in favor of abstention. The state court assumed jurisdiction over the Property in the Foreclosure Action, which was originally filed more than seven years ago and a judgment has been entered against the Kinzys, which is now before the Illinois Court of Appeals. In contrast, there have been no responsive pleadings filed in the instant case, which was filed approximately four months ago. As a result, the first, fourth, and seventh factors heavily favor abstention. Similarly, the third factor regarding the desirability of avoiding piecemeal litigation weighs in favor of abstention because the Foreclosure Action will likely dispose of a majority of the factual and legal issues presented in this case. Abstaining, therefore, would prevent the parties from simultaneously litigating mirror issues in state and federal court and save judicial resources as *Colorado River* intended. *See Colorado River*, 424 U.S. at 817. The fifth, sixth, and eighth factors also favor abstention. Even though two of the Kinzys' claims involve federal statutes, those claims implicate the validity of the 2007 Mortgage and the propriety of the Foreclosure Action, issues governed by Illinois law. The rest of the Kinzys' claims are grounded in state law and many of their federal claims, including their claims for misrepresentation, quiet title, slander of title, and violations of ICFDPA have already been asserted in the Foreclosure Action, as they concede in their response brief. The rest of the factors are neutral. In sum, because the state and federal cases are parallel and the majority of

the ten factors weigh in favor of abstention, the Court abstains from exercising jurisdiction pursuant to the *Colorado River* doctrine. This conclusion aligns with the holdings of other district courts in this district addressing these factors in similar claims arising out of state foreclosure actions. *See, e.g., Nieves*, 2015 WL 753977 at *5-6; *Smith v. Bank of America, N.A.*, 14 C 1041, 2014 WL 3938547 at *3 (N.D. Ill. Aug. 12, 2014); *Pirard*, 2013 WL 1154294 at *4; *Charles*, 2012 WL 6093903 at *4; *Petit v. Washington Mut. Bank, F.A.*, No. 12 C 318, 2012 WL 3437287 at *4 (N.D. Ill. Aug. 14, 2012) (Kendall, J.).

The Supreme Court left both dismissal and a stay as options where the Court determines that the *Colorado River* doctrine applies. *See Selmon v. Portsmouth Drive Condominium Ass'n*, 89 F3d 406, 409 (7th Cir. 1996). The Seventh Circuit has concluded that a stay of the federal proceedings rather than a dismissal is appropriate because the federal forum should be available to the plaintiff in the event that the state court does not adequately adjudicate the issues. *See CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851 (7th Cir. 2002) (noting that dismissing instead of staying a case would be "illogical"). Considering that abstention is appropriate, the Court therefore stays this case in order to allow a final judgment to be rendered in the Foreclosure Action.

## **THE COURT'S INHERENT AUTHORITY TO ISSUE A STAY**

Even if the *Colorado River* doctrine were not applicable, the Court would invoke its inherent authority to stay this matter pending a final judgment in the Foreclosure Action. As detailed above, this Court has the inherent authority to control its cases and "the power to stay proceedings is incidental" to that power. *Texas Indep. Producers & Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005) (citation omitted). In determining whether to issue a stay, courts generally consider three factors: "(1) whether a stay will unduly prejudice or

tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the court." *See, e.g., Tel. Sci. Corp. v. Asset Recovery Solutions, LLC,* No. 15 C 5182, 2016 WL 47916, at *2 (N.D. Ill. Jan. 5, 2016). The second and third factors are similar and courts, therefore, often analyze them together. *See id.* There is no doubt that a stay will simplify the issues and reduce the burden of litigation, as many of the issues presently before the Court will likely be considered by the Illinois Court of Appeals. Furthermore, staying this matter will not unduly prejudice or tactically disadvantage the Kinzys since they are currently litigating the same claims before the Illinois Court of Appeals and to the extent that court does not adequately address their claims, this Court will do so.

## **CONCLUSION**

For the reasons stated herein, the Court denies Fidelity and Pierce's Motion to Dismiss or Transfer and grants Howard & Howard, First Tennessee, and Pierce's Motion to Stay. This matter shall be stayed until a final judgment in Foreclosure Action is rendered. The parties also shall file a status report notifying the Court of the conclusion of State Foreclosure Action within seven days of the final disposition of that case.

*[Signature: Virginia M. Kendall]*

Date: January 17, 2017